**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **KWAME ASAFO-ADJEI,** | |
| Plaintiff | |
| v. | Case No.: RWT 09cv2184 |
| **FIRST SAVINGS MORTGAGE CORP.,** *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

This is a case about someone who entered into a mortgage loan and was allegedly left holding the bag.

## PROCEDURAL HISTORY

On July 14, 2009, Plaintiff Kwame Asafo-Adjei, *pro se*, filed a complaint against Defendants First Savings Mortgage Corporation ("First Savings"), Andrew MacTigue, Hal J. Epstein, Homecomings Financial LLC ("Homecomings"), Wilshire Credit Corporation ("Wilshire"), and George Bonney in the Circuit Court for Montgomery County, Maryland. *See* Paper No. 1. One month later, on August 17, 2009, Plaintiff supplemented his complaint by filing an "Amendment to Claim." *See* Paper No. 36.

The complaint and "Amendment to Claim," liberally construed, appear to assert claims for common law fraud, conspiracy to commit fraud, and intentional infliction of emotional distress, as well as violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*,

and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*[1]  *See* Compl. ¶¶ 1-33; Pl.'s Amend. to Claim at 1.

The action was removed to this Court on August 20, 2009.  *See* Paper No. 1. Homecomings is the only Defendant to have answered the complaint, *see* Paper No. 5, and Defendant Bonney has not answered or otherwise defended this action.[2]

The following motions are currently pending before the Court: (i) Homecomings' Motion to Dismiss (Paper No. 6), which the Court shall construe as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c); (ii) Homecomings' Motion to Strike Plaintiff's Surreply (Paper No. 27);[3] (iii) Epstein's Motion to Dismiss (Paper No. 11); (iv) First Savings and MacTigue's Motion to Dismiss (Paper No. 18); (v) Wilshire's Motion to Dismiss (Paper No. 23); and (vi) Plaintiff's Motion for Joinder (Paper No. 29).

## **ALLEGED FACTS**

This lawsuit arises from Plaintiff's involvement in the purchase and financing of a property located at 14106 and 14100 Old Columbia Pike, Burtonsville, MD 20866 (the "Property").  *See* Compl. ¶ 4.  On or about December 2004, Botan Group LLC ("Botan Group"), through its resident manager George Bonney, allegedly "contracted for the sale" of the Property with seller Kathleen Barry[4] for a price of $745,000, subject to the buyers' financing.  *See id*.  In July or August 2005, Barry allegedly informed Bonney that she "was willing and able to get the Botan Group the necessary financing to complete the sale," *see id*. ¶ 5, and "brought herself,

---

[1] The complaint is a mélange of alleged facts and legal claims; it contains no counts or distinct causes of action. *See generally* Compl. ¶¶ 1-33. The complaint does not specifically refer to intentional infliction of emotional distress, TILA, or the FCRA, but contains allegations that appear to relate to these legal theories.

[2] Homecomings asserts in its Statement Regarding Removal that none of the defendants was properly served. *See* Paper No. 28.

[3] The Court shall strike Plaintiff's "Opposition to Homecomings Financial's Motion to Dismiss" (Paper No. 20) because it is a surreply filed without leave of court. *See* L.R. 105.2.a.

[4] Barry is not a party to this action.

George Bonney and the First Mortgage Corporation into negotiations for the loan financing," *see id.* ¶ 6. Andrew MacTigue, a loan officer at First Mortgage, purportedly processed the loan and communicated solely with Bonney. *See id.* ¶ 7.

Bonney allegedly "informed the group" that First Mortgage claimed "that the Botan [Group] LLC did not have sufficient credit background and would only grant the loan in the name of all the members of the company as guarantors of the Botan company." *See id.* ¶ 8. Bonney purportedly told Plaintiff that First Mortgage had granted the loan, and that he and Plaintiff needed to "sign some papers on behalf of Botan [G]roup," which Plaintiff did sign. *See id.* ¶ 9.

In August 2005, the members of the Botan Group (George Bonney, Eric B. Agyapong, Lydia Amoakohene,[5] and Plaintiff), purportedly appeared at the offices of Hal J. Epstein, the settlement agent. *See id.* ¶ 10. At the settlement, "Attorney Hal J. Epstein made all the members sit at a round table and without any explanation whatsoever, a heap of documents were passed around and [the members of the Botan Group] were made to append our signatures at specific areas with the understanding that all the members had equal rights and responsibilities to the loan undertaking." *See id.* ¶ 11. The deed presented at the settlement allegedly contained the names of the four members of the Botan Group. *See id.* ¶ 12.

Plaintiff alleges that, unbeknownst to him, the loan had been issued only to him and not to the Botan Group or any of the other members of the Botan Group. *See id.* ¶ 13. First Savings purportedly "facilitated the loan by using fictitious information to make [Plaintiff] eligible for a loan of $745,000 without [his] knowledge and consent." *Id.* ¶ 14. Specifically, the loan

---

[5] Agyapong and Amoakohene are not parties to this action.

application allegedly vastly overstated his monthly income as $14,583.22 and incorrectly stated that he had accounts at Bank of America containing $146,374.26. *See id.* ¶¶ 15-24.

On or around October 9, 2008, the Loan Compliance Advisory Group LLC,[6] allegedly served a Notice of Rescission on all Defendants on behalf of Plaintiff and the other members of the Botan Group. *See id.* ¶ 27. The loan eventually went into default, and on June 8, 2009, a foreclosure sale took place. *See id.* ¶ 28.

Homecomings and Wilshire purportedly collected and received payments arising out of the loan, *see id.* ¶ 30, and Homecomings allegedly "caused the Credit Bureau to damage Plaintiff's credit and caused his credit card to be revoked," *id.* ¶ 31. In addition, as a result of Defendants' actions, Plaintiff has allegedly suffered damages as well as severe emotional distress. *See id.* ¶ 32.

## STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

---

[6] The Loan Compliance Advisory Group LLC is "a private group which investigates predatory lending practices of banks." Compl. ¶ 13.

## ANALYSIS

The Court shall analyze each of the causes of action understood to be asserted in the complaint and "Amendment to Claim," and then address Plaintiff's Motion for Joinder.

**I.     Fraud**

A plaintiff alleging common law fraud in Maryland must plead the following:

> (1) that a false representation was made by a party;
> (2) that its falsity was known to that party or that the misrepresentation was made with such reckless indifference to truth as to impute knowledge to the party;
> (3) that the misrepresentation was made for the purpose of defrauding some other person;
> (4) that the person not only relied on the misrepresentation but had a right to rely upon it with full belief in its truth, and that the person would not have done the thing from which the damage resulted if the misrepresentation had not been made; and
> (5) that the person suffered damage directly resulting from the misrepresentation.

*Gross v. Sussex, Inc.*, 630 A.2d 1156, 1161 (Md. 1993).  Pursuant to Fed. R. Civ. P. 9(b), a plaintiff must plead with particularity "the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The Fourth Circuit has explained that under Rule 9(b), a party must describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).  Where there are multiple defendants, a "plaintiff must state all claims with particularity as to each of the defendants and identify each individual defendant's participation." *Baltimore County v. Cigna Healthcare*, 238 Fed. App'x 914, 924 (4th Cir. 2007) (quoting *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250-251 (D. Md. 2000)) (quotation marks and brackets omitted).

In Maryland, the statute of limitations for fraud is three years. *See* Md. Code. Ann., Cts. & Jud. Proc. § 5-101. However, "[i]f the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." *Id.* § 5-203; *see also Dual Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095, 1105 (Md. 2004) ("Maryland law recognizes that it is unfair to impart knowledge of a tort when a potential plaintiff is unable to discover the existence of a claim due to fraud or concealment on the part of the defendant.").

Plaintiff's claim for fraud is time barred. Plaintiff brought the instant action on July 14, 2009, more than three years after the alleged fraud occurred in August 2005. The doctrine of fraudulent concealment cannot save Plaintiff's claim because the complaint, as it is currently formulated, does not "contain specific allegations of how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence." *Dual*, 857 A.2d at 1105-6 (citation omitted); *see also id.* at 1105 (holding that a plaintiff must plead fraudulent concealment with specificity in order to invoke § 5-203); *Douglass v. NIT-TSS, Inc.*, 632 F. Supp. 2d 486, 491 (D. Md. 2009) (summarizing doctrine under Maryland law).

Assuming, *arguendo*, that Plaintiff's claim is not time barred, the complaint also fails to plead fraud with particularity. The following allegations of fraudulent conduct, for example, do not meet the requirements of Fed. R. Civ. P. 9(b):

- "George [Bonney] informed the [Plaintiff] that the Corporation had granted the loan and that [Plaintiff] and George [Bonney] were to go to the Corporation offices to sign some papers on behalf of the Botan [G]roup, which I did sign." Compl. ¶ 9.
- "At the settlement, Attorney Hal J. Epstein made all the members sit at a round table and without any explanation whatsoever, a heap of documents were passed

6

> around and were [sic] made to append our signatures at specific areas with the understanding that all the members had equal rights and responsibilities to the loan undertaking." *Id*. ¶ 11.
>
> - "[T]he corporation had facilitated the loan by using fictitious information to make [Plaintiff] eligible for a loan of $745,000 without my knowledge and consent." *Id*. ¶ 11.

Plaintiff has failed to allege the "who, what, when, where, and how of the alleged fraud." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). Accordingly, the complaint does not plead a prima facie case of fraud under *Iqbal* and Fed. R. Civ. P. 9(b).[7]

Recognizing that Plaintiff, *pro se*, may be able to assert a timely claim for fraud if the statute of limitations is tolled under § 5-203, the court shall dismiss his claim without prejudice.

## II. Conspiracy to Commit Fraud

Under Maryland law, a claim for civil conspiracy has the following elements:

> (1) A confederation of two or more persons by agreement or understanding;
> (2) [S]ome unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and
> (3) Actual legal damage resulting to the plaintiff.

---

[7] The Court notes that Plaintiff attached to his complaint a Uniform Residential Loan Application *with his initials on each page and signed by him* indicating that his monthly income was $14,583.22 and that he had bank accounts at Bank of America containing approximately $146,374.26. *See* Compl. Ex. A, Uniform Residential Loan Application. Plaintiff admits that he earned only $4,660.82 a month, *see* Compl. ¶ 23, and that he had no bank accounts at Bank of America, *see id*. ¶ 24. Ordinarily, such overstatements of income and assets on a loan application would suggest a fraud perpetrated by the borrower on the lender, not vice versa.

Also, Plaintiff attached to his complaint numerous documents containing *only his signature* as borrower or applicant. *See* Compl. Ex. A, Uniform Residential Loan Application; Balloon Note; First Payment Letter; Servicing Disclosure Statement; Borrower's Affidavit; Flood Insurance Authorization Letter; Adjustable Rate Note; Interest-Only Addendum to Adjustable Rate Promissory Note. The Complaint does not articulate how Plaintiff could have relied on any alleged misrepresentation given that the names of no other borrowers appeared in these documents. *But see* Compl. Ex. A, Deed of Trust (listing all four members of the Botan Group); Interest-Only Addendum to Adjustable Rate Rider (same); Federal Truth-In-Lending Disclosure Statement (same); Deed (same).

*Lloyd v. GMC*, 916 A.2d 257, 284 (Md. 2007) (quotation marks and citation omitted). Maryland courts have consistently held that "conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Id.*

Because Plaintiff has failed to allege fraud, his claim for conspiracy to commit fraud must also fail. And even assuming the complaint had asserted a cause of action for fraud, the conspiracy claim would nonetheless be dismissed because the complaint does not assert adequate facts to "allow the court to draw the reasonable inference," *Iqbal*, 129 S. Ct. at 1949, that Defendants worked in concert.

### III.   Intentional Infliction of Emotional Distress

Under Maryland law, a claim of intentional infliction of emotional distress has four elements:

> (1) The conduct must be intentional or reckless;
> (2) the conduct must be extreme and outrageous;
> (3) there must be a causal connection between the wrongful conduct and the emotional distress;
> (4) the emotional distress must be severe.

*Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000). Liability exists only for "conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 319 (Md. Ct. Spec. App. 1995) (citation omitted). For the conduct to be extreme and outrageous, the Maryland Court of Special Appeals has explained that "[t]he conduct must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1064 (Md. Ct. Spec. App. 1986). "The requirements of the rule are rigorous, and difficult to satisfy." *Bagwell*, 665 A.2d at 319 (citation omitted).

Plaintiff's claim for intentional infliction of emotional distress must be dismissed. The complaint contains a single allegation that "[t]he defendants['] acts are intentional and have caused the plaintiff severe emotional distress." Compl. ¶ 32. Plaintiff fails to identify which Defendants caused his emotional distress or describe with particularity the emotional distress that he allegedly suffered. Furthermore, the Court cannot imagine *any* set of facts surrounding a mortgage transaction that would support an inference of extreme and outrageous conduct.

Accordingly, the Court shall dismiss Plaintiff's claim for intentional infliction of emotional distress with prejudice.

## IV.    TILA

Under TILA, borrowers have three days from the date of consummation of a consumer credit transaction in which a security interest is "acquired in any property which is used as the principal dwelling of the person to whom credit is extended" to exercise their right to rescind. 15 U.S.C. 1635(a). If a lender fails to provide certain disclosures, however, a borrower's right to rescind is extended to three years from the transaction date. *See* 15 U.S.C. 1635(f).

Here, Plaintiff purportedly provided a Notice of Rescission on or around October 9, 2008, *see* Compl. ¶ 27, more than three years after the consummation of the mortgage transaction in August 2005, *see id.* ¶ 10. Accordingly, even if Plaintiff had alleged – and he did not – that the lender failed to provide the requisite disclosures, his TILA claim would nonetheless be time barred. As a result, Plaintiff's TILA claims must be dismissed with prejudice.[8]

---

[8] Moreover, it appears that the credit transaction at issue in this case involved an extension of credit primarily for business or commercial purposes, *see* Compl. Ex. A, Residential Loan Application (checking investment property), thereby falling outside the operation of TILA. *See* 15 U.S.C. § 1603(1); 12 C.F.R. § 226.3(a); *see also* 15 U.S.C. 1635(a) (applying only to transactions in which a security interest is acquired in the "*principal dwelling* of the person to whom credit is extended" (emphasis added)); *Kuechler v. Peoples Bank*, 602 F. Supp. 2d 625, 629 (D. Md. 2009) (explaining that TILA is limited to consumer credit).

9

V.     **FCRA**

"Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Robinson v. Equifax Info. Services, LLC*, 560 F.3d 235, 239 (4th Cir. 2009) (quotation marks and brackets omitted). Section 1681s-2(a) of the FCRA prohibits any person from furnishing information to a credit reporting agency that the person knows or should known is inaccurate. *See* 15 USCS § 1681s-2(a)(1)(A).

Plaintiff's FCRA claim consists of a single sentence in the complaint: "[w]ith the knowledge and evidence of the fraud, the Homecomings [sic] caused the Credit Bureau to damage Plaintiff's credit and caused his credit card to be revoked." Compl. ¶ 31. Such a conclusory allegation, devoid of any factual support, falls far short of the minimum pleading requirements of *Iqbal*. 129 S. Ct. at 1949-50.

VI.    **Joinder of GMAC Mortgage, LLC**

Because the complaint shall be dismissed for failure to state a plausible claim for relief, the Court shall deny as moot Plaintiff's Motion for Joinder (Paper No. 29).

## **CONCLUSION**

The Court, by separate Order, will dismiss with prejudice Plaintiff's claims for intentional infliction of emotional distress and for TILA violations. However, the Court will dismiss without prejudice Plaintiff's claims for fraud, conspiracy to commit fraud, and FCRA violations. Plaintiff is granted leave to file an amended complaint, if he chooses to do so, on or before March 25, 2010 containing these claims and adding any parties, such as GMAC Mortgage LLC, that he deems necessary.

Plaintiff is reminded of the provisions of Fed. R. Civ. P. 4 (setting forth the procedures for service), Fed. R. Civ. P. 8(a) (requiring a short and plain statement showing that the pleader

is entitled to relief), Fed. R. Civ. P. 9(b) (mandating that fraud be pled with particularity), the local rules of this Court, and the teachings of the Supreme Court in *Iqbal*, and is cautioned that any amended complaint failing to comply with these standards may be subject to dismissal under Fed. R. Civ. P. 12(b)(6) or 12(c). The Federal Rules of Civil Procedure, including Fed. R. Civ. P. 11 (providing for sanctions against litigants who bring frivolous claims), apply to parties represented by counsel and *pro se* litigants alike.

A separate Order follows.


February 25, 2010                                /s/
Date                               Roger W. Titus
                                   United States District Judge