**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **KWAME ASAFO-ADJEI**, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Case No.: RWT 09cv2184 |
| | * | |
| **FIRST SAVINGS MORTGAGE** | * | |
| **CORP.**, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

## MEMORANDUM OPINION

At its core, this case is about a failed business venture. A group of investors planned to develop certain real property in Maryland, and one such investor secured a loan that would make this plan a reality. The business venture having failed, the investor now sues one of his business partners and various corporations and individuals involved in the venture for fraud and professional negligence. For the reasons state below, the investor's complaint will be dismissed with prejudice.

## PROCEDURAL HISTORY

On July 14, 2009, Plaintiff Kwame Asafo-Adjei, *pro se*, filed a complaint against Defendants First Savings Mortgage Corporation ("First Savings"), Andrew MacTigue, Hal J. Epstein, Homecomings Financial LLC ("Homecomings Financial"), Wilshire Credit Corporation ("Wilshire"), and George Bonney in the Circuit Court for Montgomery County, Maryland. ECF No. 2. One month later, on August 17, 2009, Plaintiff supplemented his complaint by filing an "Amendment to Claim." *See* ECF No. 36. The complaint and "Amendment to Claim" appeared to assert claims for common law fraud, conspiracy to commit fraud, intentional infliction of

emotional distress, violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, and violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.* ECF Nos. 2, 36.

The action was removed to this Court on August 20, 2009. ECF No. 1. Homecomings Financial, First Savings, Wilshire, Hal J. Epstein and Andrew MacTigue moved to dismiss the complaint. ECF Nos. 6, 11, 18 and 23. On February 25, 2010, this Court held that Asafo-Adjei's complaint failed to plead fraud with particularity and failed to allege well-pleaded facts in support of his FCRA and conspiracy claims. ECF Nos. 37 and 38. The Court further held that Asafo-Adjei's fraud claims were barred by Maryland's three-year statute of limitations. *Id.* The Court dismissed Asafo-Adjei's TILA and intentional infliction of emotional distress claims with prejudice, but granted Asafo-Adjei leave to file an amended complaint containing claims for fraud, conspiracy to commit fraud and FCRA violations. ECF No. 37.

On March 24, 2010, Asafo-Adjei filed an amended complaint asserting claims against George Bonney, Hal J. Epstein, First Savings, Homecomings Financial, Andrew MacTigue, Wilshire, GMAC Mortgage LLC, and Green Tree Servicing, LLC. ECF No. 40. Asafo-Adjei's amended complaint, construed liberally, asserts claims for fraud against all defendants and professional liability against Defendant Epstein.[1] *Id.* Asafo-Adjei seeks a declaration that the contract he signed to secure the loan necessary to pursue the business venture is void and also demands $500,000 in damages. *Id.*

On January 26, 2011, Defendants GMAC Mortgage LLC and Homecomings Financial were dismissed with prejudice pursuant to a consent motion. ECF No. 67. All remaining

---

[1] As in his initial complaint, Asafo-Adjei's amended complaint contains only one sentence alleging Defendants' actions caused damage to his credit rating. *See* Am. Compl. ¶ 38. This is clearly insufficient to state a FCRA claim.

Defendants have moved to dismiss the amended complaint. *See* ECF Nos. 46, 49, 51, 53, 55, and 63.

## **ALLEGED FACTS**

This lawsuit arises from Plaintiff's involvement in the purchase and financing of a property located at 14106 and 14100 Old Columbia Pike, Burtonsville, MD 20866 (the "Property"). *See* Am. Compl. ¶ 8. The Amended Complaint alleges that on or about December 2004, Botan Group LLC ("Botan Group"), through its "resident manager" George Bonney, allegedly "contracted for the sale" of the Property with seller Cathleen Barry[2] for a price of $745,000, subject to the buyers' financing. *See id.* at ¶¶ 8, 10. In July or August 2005, Barry allegedly informed Bonney that she "was willing and able to get the Botan Group the necessary financing to complete the sale," *see id.* ¶ 9, and "brought herself, George Bonney and the First Savings Mortgage Corporation into negotiations for the loan financing," *see id.* ¶ 10. Andrew MacTigue, a loan officer at First Savings, purportedly processed the loan and communicated solely with Bonney. *See id.* ¶ 11.

Bonney allegedly "informed the group" that First Savings determined "that the Botan [Group] LLC did not have sufficient credit background and would only grant the loan in the name of all the members of the company as guarantors of the Botan company." *See id.* ¶ 12. Bonney purportedly told Asafo-Adjei that First Savings had granted the loan, and that he and Asafo-Adjei needed to "sign some papers on behalf of Botan [G]roup." *See id.* ¶ 13.

In August 2005, the members of the Botan Group (George Bonney, Eric B. Agyapong, Lydia Amoakohene,[3] and Asafo-Adjei), purportedly appeared at the offices of Hal J. Epstein, the settlement agent. *See id.* ¶ 14. At the settlement, "attorney Hal J. Epstein made all the members

---

[2] Barry is not a party to this action.

[3] Agyapong and Amoakohene are not parties to this action.

sit at a round table and without any explanation whatsoever, a heap of documents were passed around and [the members of the Botan Group] were made to append our signatures at specified areas with the knowledge and understanding that all the members had equal rights and obligations [with respect] to the loan undertaking." *See id.* ¶ 16. Asafo-Adjei alleges that he and the other investors were lead to believe that they were purchasing two plots of land, but that he later discovered that "there was no plot of land or property known as Plot 14100 Old Columbia Pike, Burtonsville, Maryland." *Id.* ¶ 22.

Asafo-Adjei alleges that, unbeknownst to him, the loan had been issued only to him and not to the Botan Group or any of the other members of the Botan Group. *See id.* ¶ 28. First Savings purportedly "facilitated . . . [the loan by] using fictitious, fabricated and false information to qualify the plaintiff eligible for a loan of $745,000 without [his] knowledge and consent." *Id.* ¶ 29. Specifically, the loan application allegedly vastly overstated his monthly income as $14,583.22 and incorrectly stated that he had accounts at Bank of America containing $146,374.26. *See id.* ¶ 30.

On or around October 9, 2008, the Loan Compliance Advisory Group LLC[4] allegedly served a Notice of Rescission on all Defendants on behalf of Plaintiff and the other members of the Botan Group. *See id.* ¶¶ 19, 36, 37. The loan eventually went into default, and on June 8, 2009, a foreclosure sale took place. *See id.* ¶¶ 37, 38.

Asafo-Adjei alleges that he has "suffered severe financial loss," damage to his credit rating, and various physical ailments as a result of Defendants' actions. *Id.* at ¶¶ 38, 40, 42.

---

[4] The Loan Compliance Advisory Group, LLC, is a Delaware limited liability company, and is not a party to this action. *See https://delecorp.delaware.gov/tin/controller.*

<u>**STANDARD OF REVIEW**</u>

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

<u>**ANALYSIS**</u>

This Court granted Asafo-Adjei leave to file an amended complaint that contained specific, well-pleaded facts to support his claims. *See* ECF No. 37. Asafo-Adjei was specifically warned that failure to comply with *Iqbal*'s requirements would result in dismissal of his amended complaint. *Id.* at 11. Unfortunately, Asafo-Adjei's amended complaint does not contain well-pleaded facts supporting his claims, and as such it will be dismissed with prejudice as to all remaining defendants.

**I.      Fraud**

A plaintiff alleging common law fraud in Maryland must plead the following:

> (1) that a false representation was made by a party;
> (2) that its falsity was known to that party or that the misrepresentation was made with such reckless indifference to truth as to impute knowledge to the party;
> (3) that the misrepresentation was made for the purpose of defrauding some other person;
> (4) that the person not only relied on the misrepresentation but had a right to rely upon it with full belief in its truth, and that the person would not have done the thing from which the damage resulted if the misrepresentation had not been made; and

> (5) that the person suffered damage directly resulting from the misrepresentation.

*Gross v. Sussex, Inc.*, 630 A.2d 1156, 1161 (Md. 1993). Pursuant to Fed. R. Civ. P. 9(b), a plaintiff must plead with particularity "the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Fourth Circuit has explained that under Rule 9(b), a party must describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). "A complaint fails to meet the particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000). A claim of fraud must be dismissed if it fails to state the "who, what, when, where, and how of the alleged fraud." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008).

Asafo-Adjei's amended complaint utterly fails to state his claims of fraud with particularity. The most obvious deficiency of the amended complaint is that it does not allege *who* among the many defendants allegedly told Asafo-Adjei that the loan was being secured by the personal guarantees of all Botan Group members, Am. Compl. ¶ 12, or *what* was said to him that made him believe that he was not the sole guarantor of the loan. *Id.* ¶¶ 13, 14. Asafo-Adjei alleges that Defendant Epstein "made all the members [of the Botan Group] sit at a round table and without any explanation whatsoever" presented them with documents for signature, but makes no allegation that Epstein said anything false that induced Asafo-Adjei to sign these documents. *Id.* ¶ 14. Asafo-Adjei alleges that he believed that all members of the Botan Group had equal obligations with respect to the loan, but his amended complaint does not state what representation any defendant made to make Asafo-Adjei believe this. *See id.* ¶ 16. Asafo-Adjei

alleges that First Savings and Epstein "caused the plaintiff and other buyers to enter [*sic*] in to the loan transaction under a reasonable but mistaken [*sic*] believe that the loan transaction was for two plots of land" but fails to allege what false representations by Epstein or First Savings induced this belief. *Id.* ¶ 22. Asafo-Adjei alleges that the loan was "facilitated . . . using fictitious, fabricated and false information" but does not indicate *who* allegedly fabricated this information. *Id.* ¶ 29. Asafo-Adjei's amended complaint contains very few factual allegations that were not contained in his initial complaint, and he again rests on conclusory allegations that Defendants defrauded him by making him believe that he was not solely responsible for the loan. Such conclusory allegations are not sufficient to survive *Iqbal*'s requirements, and are clearly insufficient to survive the heightened pleading standard of Rule 9(b). Accordingly, the amended complaint must be dismissed.

Further, Asafo-Adjei's fraud claim is barred by the statute of limitations. In Maryland, the statute of limitations for fraud is three years. *See* Md. Code. Ann., Cts. & Jud. Proc. § 5-101. However, "[i]f the knowledge of a cause of action is kept from a party *by the fraud of an adverse party*, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." *Id.* § 5-203 (emphasis added); *see also Dual Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095, 1105 (Md. 2004) ("Maryland law recognizes that it is unfair to impart knowledge of a tort when a potential plaintiff is unable to discover the existence of a claim due to fraud or concealment on the part of the defendant.")

Asafo-Adjei brought the instant action on July 14, 2009, more than three years after the alleged fraud occurred in August 2005. He is not entitled to tolling of the statute of limitations because his amended complaint does not "contain specific allegations of how the fraud kept the

plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence." *Dual*, 857 A.2d at 1105-6 (citation omitted); *see also id.* at 1105 (holding that a plaintiff must plead fraudulent concealment with specificity in order to invoke § 5-203); *Douglass v. NIT-TSS, Inc.*, 632 F. Supp. 2d 486, 491 (D. Md. 2009) (summarizing doctrine under Maryland law). In opposing dismissal of his amended complaint, Asafo-Adjei states that Defendants "concealed the fraudulent acts" in an "ingenious manner" such that he "had no cause to further investigate" whether the loan was secured to purchase one plot of land or two. ECF No. 54 at 3. These allegations fail to state with any specificity what Defendants actually did to keep Asafo-Adjei in ignorance of the alleged fraud. Asafo-Adjei similarly fails to state what Defendants did to conceal from him the fact that he was the sole guarantor of the loan. As such, Asafo-Adjei is not entitled to tolling of the three year statute of limitations, and his fraud claims against all Defendants are time-barred.

## II.     Professional Liability

Asafo-Adjei's professional liability claim is similarly barred by the statute of limitations. The statute of limitations for a claim of professional liability is three years. *See* Md. Code. Ann., Cts. & Jud. Proc. § 5-101. The thrust of Asafo-Adjei's professional liability claim is that Defendant Epstein, the settlement agent, owed a fiduciary duty to Asafo-Adjei to ensure that he was receiving title to two plots of land, rather than one. Am. Compl. ¶¶ 24-27. Asafo-Adjei is not entitled to tolling of the three-year statute of limitations on his professional liability claim because he has alleged no facts that show that Epstein prevented him from discovering the alleged fraud in the over three years after the loan transaction was completed. *Dual*, 857 A.2d at 1105-6 (citation omitted) (in order to toll statute of limitations, complaint must "contain specific

allegations of how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence.")   As such, Asafo-Adjei's professional liability claim must be dismissed with prejudice.

## <u>CONCLUSION</u>

All of Asafo-Adjei's claims are time-barred.  Further, Asafo-Adjei has failed to plead fraud with particularity, or even to include sufficient factual allegations in his amended complaint to survive a motion to dismiss under *Iqbal*'s less stringent standard.  Accordingly, Asafo-Adjei's amended complaint will be dismissed with prejudice by separate order

<u>February 1, 2011</u>                        _____/s/_____
Date                                              Roger W. Titus
                                                  United States District Judge